IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRY FIELDS and : | |
| RUSSELL KING : | |
| : | CIVIL ACTION |
| v. : | |
| : | NOS. 14-2491, 14-4493 |
| SOUTHEASTERN PENNSYLVANIA : | |
| TRANSPORTATION AUTHORITY : | |

**MEMORANDUM**

**SURRICK, J.**                                                                             **JULY 31 , 2015**

      Presently before the Court is the Defendant's Motion for Partial Summary Judgment (ECF No. 16). For the following reasons, Defendant's Motion will be granted.

**I.    BACKGROUND**

      This is an employment-related action brought pursuant to the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq*. Plaintiffs independently bring claims under § 20109 against Southeastern Pennsylvania Transportation Authority ("SEPTA"). Their claims arise out of employment discipline assessed against them in connection with a railway work accident.

      **A.    Factual Background**

      In 2011, Plaintiff Terry Fields and Plaintiff Russell King were both employed by SEPTA as track general helpers. (Fields Dep. 7, Def.'s Mot. for Summ. J. Ex. "B"; King Dep. 9-11, Def.'s Mot. for Summ. J. Ex. "A.") As workers on the railroad, Fields and King received regular safety and hazard training under the Northeast Operating Rules Advisory Committee ("NORAC") Rules, a set of standards adopted by SEPTA.[1] (Fields Dep. 13; King Dep. 15.)

---

[1] The NORAC Rules are a set of rules adopted nationwide by passenger railway systems, which govern the railroad operations of member railroads. *Gayle v. Nat'l R.R. Passenger Corp.*,

Plaintiffs independently acknowledged the importance of safety on the jobsite, and the responsibility to voice concerns of any safety hazards. (Fields Dep. 14; King Dep. 16, 57-58.) These rules include a right-to-challenge rule. The right-to-challenge rule requires SEPTA employees to report, and indeed challenge their working conditions, where any unsafe condition is seen that may jeopardize the safety of employees. (Fields Dep. 55.) Employees may be disciplined for failing to challenge their working conditions where an unsafe condition is present. (Craig Dininny Dep. 34, 37-39, Def.'s Mot. for Summ. J. Ex. "H.") Conversely, the right-to-challenge rule provides that no employee may face discipline for reporting or challenging an unsafe working condition.

During the relevant time of their employment with SEPTA, Fields and King were both members of the Brotherhood of Maintenance of Way Employees Division of the Teamsters Union. (Fields Dep. 9-11; King Dep. 9-10.) As members of the union, they were subject to a collective bargaining agreement ("CBA") which included a progressive discipline policy. (CBA 14-15, Def.'s Mot. for Summ. J. Ex. "J.") The progressive discipline policy includes stages of discipline that are implemented prior to an employee's discharge. The progressive stages are: documented verbal warning; written warning; one-day administrative suspension; three-day suspension, which includes one day without pay; and discharge. (*Id*.) Progressive discipline begins anew after an employee goes without any discipline for 730 consecutive days. (*Id*. at 15.)

On May 18, 2011, Fields and King, along with other SEPTA employees, were assigned to repair a section of the railway along the regional rail airport line. (Fields Dep. 28-29; King Dep. 37.) Two trucks were used to service the railway, a "boom truck" (a large, high-rail vehicle used

---

701 F. Supp. 2d 556, 563 (S.D.N.Y. 2010). "The NORAC Rules apply to all railroad employees when they are working on a NORAC member railroad's property." *Id*. (internal quotation marks and citation omitted).

to maneuver heavy rail segments) and a "gang truck" (a smaller high-rail vehicle used to transport workers and their tools). Fields was a passenger in the gang truck, and King was a passenger in the boom truck. (Fields Dep. 31-32; King Dep. 10-11.) It was raining that day, and the railway was wet. (May 19, 2011 King Statement, Def.'s Mot. for Summ. J. Ex. "E.") After positioning the vehicles on the railway, the larger boom truck followed the gang truck down a steep decline. (Fields Dep. 31; King Dep. 37.) The gang truck came to a rest at the bottom of the decline. The boom truck, however, was unable to stop, slid down the railway, and crashed into the gang truck. (Fields Dep. 31; King Dep. 37.)

King did not suffer any personal injury in the May 18, 2011 incident. (King Dep. 34.) In addition, he did not report any damage to the boom truck. (*Id*. at 41.) Fields, however, sustained an injury to his back. (Fields Dep. 22-23.) He also suffered emotional distress and mental anguish related to sustaining the injury and living with it on a daily basis. (*Id*. at 100.) Fields eventually brought a personal injury claim against SEPTA. (*Id*. at 94.) That claim was ultimately settled, compensating Fields for his injuries. (*Id*.) After an investigation, SEPTA did not issue any discipline to any worker for the incident. (Craig Dininny Dep. 14, Def.'s Mot. for Summ. J. Ex. "F.")

On the evening of July 26, 2011, Fields and King were again assigned to the same section of railway, with largely the same crew members and trucks from the May 18, 2011 incident. (Fields Dep. 39, 52; King Dep. 44-45.) It was "raining hard" that night. (King Dep. 74.) King was driving the boom truck with Fields as his passenger. (Fields Dep. 39; King Dep. 44-46.) After placing the boom truck on the railway behind the gang truck, both trucks proceeded towards the steep declined stretch of railway. (Fields Dep. 38-39.) Although the conditions and circumstances were similar to those of the May incident, neither Fields nor King challenged the

plan to drive the boom truck down the decline of the railway.  King was unable to stop the boom truck, and crashed into the back of the gang truck.  (*Id*.)  Neither Fields nor King reported any injuries as a result of this crash.[2]  (Fields Dep. 45, 98; King Dep. 47.)  Neither Fields nor King brought any claim for injuries with regard to the July 26 accident.

SEPTA conducted an investigation into the cause of the July 26, 2011 crash.  (John Rowan Dep. 34-36, Def.'s Mot. for Summ. J. Ex. "I.")  That investigation resulted in discipline assessed against both Fields and King.  The discipline stemmed from the fact that the July 26, 2011 crash was nearly identical to the May 18, 2011 crash, and that both Fields and King were involved in both accidents.

Fields was assessed with a violation of worker rules for failing to challenge an unsafe assignment.  (Fields Dep. 71-72; July 29, 2011 Report of Interview (Fields 1 of 2), Def.'s Mot. for Summ. J. Ex. "K.")  He also received a violation of worker rules for being an accident-prone employee.  (Fields Dep. 80; July 29, 2011 Report of Interview (Fields 2 of 2), Def.'s Mot. for Summ. J. Ex. "L.")  The violation for failing to challenge an unsafe working condition was Fields' first level of discipline, and so he was given a written record of a verbal warning.  (Fields Dep. 71-73.)  Fields' violation for being accident-prone was the second violation on his record.  For that he received the second step of progressive discipline, a written warning.  (*Id*. at 79-80.)  Even though he received discipline for the July 26, 2011 incident, Fields did not receive any reduction in his position, work responsibilities, compensation, and/or benefits.  (*Id*. at 81, 86.)

---

[2] Although Fields did not report any injuries sustained as a result of the July 26, 2011 incident to SEPTA, he testified at his deposition that he reported aggravating an earlier injury to his treating physician.  (Fields Dep. 43-45.)  The record presented does not contain any medical or other records to substantiate this testimony.  In fact, the records presented, including an interview form completed immediately following the accident and the grievance form completed by Fields' union on August 16, 2011, both represent that Fields did not suffer any injury in the July 26, 2011 accident.  (Fields' Grievance Form, Def.'s Mot. for Summ. J. Ex. "G"; July 27, 2011 Interview Form, Def.'s Mot. for Summ. J. Ex. "H.")

There were no other negative repercussions from these warnings on his record. Fields' record remained clear for the next two years. (*Id*. at 80.) Under SEPTA policy, the warnings Fields received from the July 26, 2011 incident were expunged from his record because he did not receive any discipline for that two year period. (*Id*. at 98-99.)

King also received discipline as a result of the July 26, 2011 incident. After the investigation, King was cited with a violation for failing to operate a work vehicle at a restricted speed, and a violation for contributing to the cause of an accident. (July 29, 2011 Report of Interview (King), Def.'s Mot. for Summ. J. Ex. "M.") Unlike Fields, King had four prior violations on his record during the prior two-year period. (King Dep. 19-20, 24-25, 28-29, 30-33.) Based upon the two violations received for the July 26, 2011 incident, King was at the progressive stage of discharge. (*Id*. at 60.) Nevertheless, SEPTA and King's Union agreed to a compromise that permitted King to remain employed as a track general helper, and he was placed at the same level of progressive discipline as he was prior to the July 26, 2011 incident. (*Id*.) King's record remained clear over the next two years, and his disciplinary record was wiped clean. (*Id*. at 64-65.)

Fields, through his union, filed two grievances with regard to the discipline that he received. (Fields Dep. 90-92.) The one grievance, filed under his CBA, argued that the discipline that he received for failing to challenge the working conditions on July 26, 2011 was not a proper basis for discipline. (*Id*. at 90-91.) SEPTA denied his grievance. (Fields' Grievance Form.) The union ultimately decided not to take the grievance to arbitration. (Fields Dep. 91-93.)

### B.   Procedural Background

King and Fields filed complaints with the United States Department of Labor

Occupational Safety and Health Administration ("OSHA") on November 3, 2011. (OSHA Complaints, Def.'s Mot. for Summ. J. Exs. "N" & "O.") OSHA did not reach a final decision within 210 days after the filing of the complaints. King and Fields thereafter sought *de novo* review in this Court pursuant to 49 U.S.C. § 20109(d)(3).

On April 30, 2014, Fields filed a Complaint against SEPTA, at Docket No. 14-2491. On July 28, 2014, King filed a Complaint against SEPTA at Docket No. 14-4493. The Complaints of both Fields and King allege that SEPTA violated the FRSA by imposing discipline on them as a result of their conduct related to the incidents of May 18, 2011 and July 26, 2011. They seek expungement of their disciplinary records related to the incidents and monetary damages. On September 10, 2014, we ordered the two cases consolidated under Docket No. 14-2491. (ECF No. 11.) On March 4, 2015, after the conclusion of discovery, SEPTA filed the instant Motion for Summary Judgment. On April 2, 2015, Plaintiff filed a Response in opposition. (ECF No. 17.) SEPTA thereafter filed a Reply in further support of its Motion on April 10, 2015. (ECF No. 18.)

## II.   LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must "not resolve factual disputes or make credibility determinations." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III.   DISCUSSION

SEPTA argues that King cannot establish that he engaged in a "protected activity" under FRSA, and he therefore fails to establish a *prima facie* case. SEPTA also argues that Fields cannot establish that he suffered any compensatory damages, and that the evidence of record does not support any claim for punitive damages.

### A.   Whether King Engaged in a Protected Activity Under FRSA

King alleges that he engaged in two types of protected activity under FRSA: the activities covered under 49 U.S.C. §§ 20109(a)(1) and (a)(4). (*See* Pls.'s Resp. Mem. of Law 7, ECF No. 17.)

FRSA allows an employee to seek relief from a discharge, discipline, or other

discrimination in violation of FRSA. 49 U.S.C. § 20109(d)(1). The procedures and rules for seeking relief under FRSA are governed by the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR-21"), 49 U.S.C. § 42121. *See* 49 U.S.C. § 20109(d)(2)(A) ("Any action under [FRSA] shall be governed under the rules and procedures set forth in [AIR-21]."). To establish a *prima facie* case under AIR-21, an employee must show that: (1) he engaged in protected activity; (2) the employer knew that he engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 157 (3d Cir. 2013). Once the employee establishes a *prima facie* case, "the burden shifts to the employer to demonstrate, 'by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior.'" *Id.* at 159 (quoting 49 U.S.C. § 42121(b)(2)(B)(ii)).

The "protected activity" referenced in the first element is set forth in §§ 20109(a)-(c) of FRSA. Relevant here, "protected activities" include: reporting a suspected violation of "any Federal law, rule, or regulation relating to railroad safety or security," 49 U.S.C. § 20109(a)(1), and reporting "a work-related personal injury or work-related illness of an employee," 49 U.S.C. § 20109(a)(4).

While King claims he engaged in protected activity for reporting a violation of Federal law, rule, or regulation, and for reporting a personal injury of an employee, the record does not support the claim that King reported anything to SEPTA or anyone else. At his deposition, King testified that he was not injured in the July 26, 2011 incident *and* that he did not report any injury to SEPTA. (King Dep. 46.) He also did not offer anything to suggest that he reported a suspected unsafe condition, or violation of law, rule, or regulation to SEPTA. In fact, King

believed that the working conditions and circumstances present on July 26, 2011 were safe. (*Id.*)

In light of the fact that King did not report anything to SEPTA, he cannot be considered to have engaged in a protected activity under §§ 20109(a)(1) and (a)(4). King received discipline stemming from the July 26, 2011 accident for operating the boom truck at an unsafe speed. Operating at an unsafe speed is not a protected activity under FRSA. Moreover, the mere fact that he was involved in an accident on July 26, 2011 does not, in and of itself, constitute a protected activity. Since King cannot establish that he engaged in a protected activity, he cannot establish a *prima facie* case of retaliation under FRSA. Therefore, his claims must be dismissed.

### B.     Whether Fields Suffered Damages

SEPTA also moves for partial summary judgment on Fields' claims for compensatory and punitive damages (the Motion does not encompass Fields' claim for special damages). It contends that the record is insufficient to support either an award for compensatory or punitive damages.

#### 1.     *Claim for Compensatory Damages*

The FRSA sets forth the damages available to an employee who is successful in his claim. Specifically, those remedies include:

> (1) In general. – An employee prevailing in any action under subsection (d) shall be entitled to all relief necessary to make the employee whole.
>
> (2) Damages. – Relief in an action under subsection (d) (including an action described in subsection (d)(3)) shall include—
>
>> (A) reinstatement with the same seniority status that the employee would have had, but for the discrimination;
>>
>> (B) any backpay, with interest; and
>>
>> (C) compensatory damages, including compensation for any special damages sustained as a result of the discrimination, including litigation costs, expert witness fees, and reasonable attorney fees.

49 U.S.C. § 20109(e)(1) & (2).

With regard to Fields' claims for compensatory damages, he pleaded the following damage components in his Complaint:

-Expungment [sic] of all references to disciplinary action related to May 18, 2011 and July 2011;

-Lost benefits with interest;

-Lost wages with interest;

-Compensatory damages for medical expenses incurred due to defendant's conduct;

-Compensatory damages for economic losses due to defendant's conduct;

-Compensatory damages for mental anguish and emotional distress due to defendant's conduct;

. . .

-Special damages for all litigation costs including expert witness fees and attorney fees.

(Fields' Compl. at Wherefore Clause, Def.'s Mot. Ex. "N.")  In response to the instant Motion, Fields argues only that he seeks compensatory damages for "emotional turmoil and distress as a result of Defendant's violation of the FRSA."  (Pls.' Resp. to Mot. for Summ. J. 14, ECF No. 17.)

Fields does not argue in support of certain of the damages that he asserted in his Complaint.  In addition, Fields has failed to produce any evidence in support of any his alleged damages.  He does not produce any evidence (let alone any indication) that he suffered lost benefits, suffered lost wages, incurred medical expenses or other economic losses, or failed to have his disciplinary record expunged.  In fact, Fields' own testimony belies all of these claims for damages.  He testified that his position, seniority, wages, benefits, and entitlement to

10

overtime have not changed as a result of the July 29, 2011 discipline.  (Fields Dep. 81-82, 85-86.)  He also testified that he did not receive any other discipline on his record following July 29, 2011.  (*Id*. 80.)  Pursuant to his CBA, Fields' discipline record has been expunged and the progressive discipline steps have started anew because his record remained free of any violation for a period of 730 days after July 29, 2011.[3]  (CBA 15.)

As to his claim for emotional distress, Fields only argues that he "had to live with the possibility of being suspended or terminated if he was involved with another accident or injury" for the ensuing 730 days after July 29, 2011.  (Pls.' Resp. 14.)  SEPTA contends that Fields cannot proceed on this claim for emotional distress because he fails to produce any evidence supporting the claim.  In addition, SEPTA argues that this claim requires expert testimony to establish causation.  Fields responds that his own testimony is sufficient to establish his claim for emotional distress damages.

There is a dearth of caselaw interpreting claims for emotional distress damages under FRSA.  We have found only one case that discusses the issue of emotional distress damages in the context of a claim brought under FRSA: *Barati v. Metro North Railroad Commuter Railroad Company*, 939 F. Supp. 2d 143, 152 (D. Conn. 2013).  In *Barati*, the court concluded that emotional distress damages are permissible in a FRSA claim because FRSA claims are governed by AIR-21, and AIR-21 permits emotional distress damages.  *Id.* (citing *Vieques Air Link, Inc. v. U.S. Dep't of Labor*, 437 F.3d 102, 110 (1st Cir. 2006)).  To establish a claim for emotional distress under AIR-21, complainants are required to "show by a preponderance of the evidence that the unfavorable personnel action caused the harm."  *Luder v. Continental Airlines, Inc.*, No. 10-26, 2012 WL 423490, at *10, ARB's Final Decision and Order of Remand (Dep't of Labor

---

[3] We note that Fields' claim for relief in the form of an expungement of the July 29, 2011 discipline from his record was rendered moot prior to the filing of this lawsuit.

11

Jan. 31, 2012) (internal quotation marks and citations omitted).

Here, Fields presents nothing more than his own self-serving argument that the discipline he received on July 29, 2011 left him with anxiety, specifically the fear of being terminated. It is difficult to understand how Fields lived in fear of being terminated, given the fact that the July 29 discipline only placed Fields at the beginning stages of progressive discipline. Pursuant to the collectively bargained progressive discipline policy, there remained numerous levels of discipline before Fields could even be considered for termination. These facts simply do not support Fields' contention that the next accident that he was involved in, or the next injury he reported, would lead to his being terminated.

It is significant that during this time period, Fields was also going through a hotly contested divorce and child custody proceedings with his ex-wife. (Fields Dep. 102-06.) Those proceedings caused Fields to suffer great emotional distress and anxiety. (*Id*. at 103, 106.) In fact, Fields and his children were being treated by a family psychiatrist during this period, relative to the divorce and custody proceedings. (*Id*. at 106.) Even though Fields allegedly voiced work-related anxiety concerns to this psychiatrist, the psychiatrist "did not formally treat Mr. Fields for work issues as he was treating Mr. Fields' children for unrelated issues." (Pls.' Resp. 14.) Fields has not provided any records from the family psychiatrist indicating that he did relay these work-related anxiety concerns. And he did not otherwise seek formal treatment from any specialist for these alleged work-related anxiety concerns.

Further complicating his claim for emotional distress is his claim for personal injuries stemming from the May 18, 2011 accident. Fields testified that he brought claims against SEPTA for the injuries he sustained in the May accident. (Fields Dep. 94.) Obviously the emotional distress was a component of the pain and suffering damages that he alleged were

caused by that accident. Fields acknowledged as much at his deposition. (*Id*. at 100.) Fields subsequently settled those claims with SEPTA. (*Id*. at 94.) While this record does not include the specifics of that settlement, we can reasonably assume that the settlement included the emotional pain and suffering that Fields was experiencing during that period of time.

Based upon the record presented, no reasonable juror could conclude that the discipline rendered on July 29, 2011 was the proximate cause of the emotional distress that Fields is now alleging. Fields was not on the verge of termination. He received only warnings and there still remained multiple steps in the progressive discipline policy before he could be considered for termination. He did not seek any formal treatment for his alleged work-related distress. His family issues during the time in question were significant and did cause him a level of distress that made him seek treatment from a psychiatrist for himself and for his children. Given that Fields complains of emotional distress stemming from his family issues as well as the emotional distress resulting from the injuries suffered on May 18, 2011, given the relatively benign nature of the discipline involved, and given Fields' settlement of his personal injury claims with SEPTA, including the claim for emotional distress related to the May 18, 2011 accident, we fail to see how Fields can at this juncture reasonably establish by a preponderance of the evidence a separate compensable claim for emotional damages related only to the discipline imposed by SEPTA. The evidence is far too attenuated. Accordingly, SEPTA's Motion will be granted as to Fields' claim for compensatory damages.

2.   *Claim for Punitive Damages*

Finally, SEPTA moves for summary judgment as to Fields' claim for punitive damages. The FRSA provides for punitive damages as an available remedy. 49 U.S.C. § 20109(e)(3). Awards of punitive damages are capped at $250,000. *Id*. "An award of punitive damages may

be awarded under FRSA where there has been reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." *Murphy v. Norfolk S. Ry. Co.*, No. 13-863, 2015 WL 914922, at *6 (S.D. Ohio Mar. 3, 2015) (internal quotation marks and citation omitted). Even in the FRSA context, punitive damages "are plainly penal" in nature. *Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 764 (M.D.N.C. 2014) (internal quotation marks omitted).

In support of the claim for punitive damages, Fields contends that there is evidence to conclude that SEPTA consciously engaged in punitive actions against him for reporting an accident and the injuries sustained therein. (Pls.' Resp. 14.) We are satisfied that there is no evidence in this record to support a claim of punitive damages here. Fields and King were involved in an accident on May 18, 2011. They were both involved in a similar accident, involving similar circumstances, on July 26, 2011. SEPTA issued discipline to Fields because it believed that the July 26 accident was entirely preventable. Indeed, that is the policy behind having the right-to-challenge work rule—to prevent work accidents and injuries. Based on SEPTA's goal of preventing injuries from occurring to Fields (or any other employee), one cannot draw the conclusion that the warnings SEPTA gave to Fields were given in a conscious disregard for his rights. There is simply nothing in this record to support the contention that SEPTA's discipline was punitive, and rendered in a callous disregard of Fields' rights. Accordingly, SEPTA's Motion for judgment as to the claim for punitive damages will be granted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of SEPTA and against Plaintiff Russell King, and judgment will be entered in favor of SEPTA and against Plaintiff Terry Fields as to his claims for

compensatory damages under 49 U.S.C. § 20109(e)(2) (excluding his claim for special damages under § 20109(e)(2)), and his claim for punitive damages under § 20109(e)(3).

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**